[Nos. 36734-0-I; 36974-1-I. Division One. August 25, 1997.]

THE STATE OF WASHINGTON, *Respondent*, v. EDUARDO CERVANTES, *Appellant.*

*In the Matter of the Personal Restraint of* EDUARDO CERVANTES, *Petitioner.*

*James R. Dixon, Randall Keys*, and *Nielsen, Broman & Associates, P.L.L.C.*, for appellant/petitioner.

*Eduardo Cervantes*, pro se.

*David S. McEachran, Prosecuting Attorney*, and *Laura D. Hayes, Deputy*, for respondent.

ELLINGTON, J. — We again consider a nonstandard instruction on reasonable doubt.[1] The instruction here has both problems and virtues, but we find it satisfies due process, and we affirm.

## Facts

Linda Craig became indebted to Eduardo Cervantes for approximately $550 for cocaine. One evening, Cervantes threatened to kill her if she did not pay within one week. To prove he could kill her with impunity, he fired his pistol three times into the air while they were standing in a trailer park. Nobody came to investigate.

Frightened, Craig went to the police and offered to work as an informant. The police set up a "controlled buy" process in which Craig exchanged marked bills for cocaine. The process involved Craig meeting police at a highway rest stop where she was searched to ensure she had neither cocaine nor money on her person or in her car. Police then gave her prerecorded buy money, and Craig drove to the trailer park where Cervantes lived. The police followed, and observed Craig enter and leave Cervantes' trailer. After she emerged, they drove to another rest stop where Craig gave police the cocaine she received. This procedure was followed on six different days; four of Craig's attempts to buy cocaine were successful.

Cervantes was charged with four counts of delivery of cocaine. The parties stipulated that Craig delivered cocaine to the police after making the controlled buys. Cervantes was convicted on three counts.

## Reasonable Doubt Instruction

The reasonable doubt instruction is the constitu-

[1]*See State v. Castle*, 86 Wn. App. 48, 935 P.2d 656 (1997).

tional centerpiece of the criminal jury trial. The instruction must make clear that the State's burden of proof beyond a reasonable doubt extends to every element of the crime charged, and must offer some definition of reasonable doubt, although no specific language is required. *See State v. Pirtle*, 127 Wn.2d 628, 656, 904 P.2d 245 (1995), *cert. denied*, 518 U.S. 1026 (1996); *State v. Coe*, 101 Wn.2d 772, 787, 684 P.2d 668 (1984).

The difficulties posed by defining reasonable doubt have been widely recognized. *See e.g., Victor v. Nebraska*, 511 U.S. 1, 114 S. Ct. 1239, 127 L. Ed. 2d 583 (1994) (Ginsberg, J., concurring). In Washington, various forms of instruction have been approved. *See Coe*, 101 Wn.2d at 772. Recently, in *State v. Castle*, 86 Wn. App. 48, 935 P.2d 656 (1997), we approved an instruction taken largely from the Federal Judicial Center model instruction, which has been characterized by Justice Ginsberg as "clear, straightforward and accurate." *Victor*, 511 U.S. at 26 (Ginsberg, J., concurring).

At Cervantes' trial, the defense offered one of Washington's standard reasonable doubt instructions, which defines a reasonable doubt as "one for which a reason exists" and one "that would exist in the mind of a reasonable person after fully, fairly, and carefully considering the evidence or lack of evidence."[2] Dissatisfied with this instruction and describing it as "empty," the trial judge instead submitted the following instruction:[3]

A "Reasonable Doubt" is not a fanciful or ingenious doubt or conjecture, but an *honest, conscientious doubt* suggested by

---

[2]In relevant part, the proposed WPIC instruction provides:

A reasonable doubt is one for which a reason exists and may arise from the evidence or lack of evidence. A reasonable doubt is a doubt that would exist in the mind of a reasonable person after fully, fairly, and carefully considering all of the evidence or lack of evidence.

11 WASHINGTON PRACTICE, WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 68, WPIC 4.01A (2d ed. 1994).

[3]The instruction apparently had its source in that given in Army courts martial.

the *material evidence* or lack of it in the case. It is an honest misgiving caused by insufficiency of proof of guilt. Proof beyond a reasonable doubt means proof to a *moral certainty* but need not be proof to an absolute or mathematical certainty. The proof need not exclude every hypothesis or possibility of innocence, but proof beyond a reasonable doubt must exclude every fair and rational hypothesis except that of guilt. A reasonable doubt is a doubt as would exist in the mind of a reasonably prudent person after fully, fairly and carefully considering all of the evidence or lack of evidence. If on the whole evidence, you have an abiding belief in the truth of the charge, you are satisfied beyond a reasonable doubt.

(Emphasis added).

██ Cervantes' challenge to the instruction centers on the phrases "moral certainty," "material evidence," and "honest conscientious doubt." We must examine the instruction in its entirety to determine whether the phrases in question create a reasonable likelihood that the jury found guilt using a standard less rigorous than the Constitution demands. *See Estelle v. McGuire*, 502 U.S. 62, 72 n.4, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991); *Victor*, 511 U.S. at 13-17; *State v. Benn*, 120 Wn.2d 631, 654-55, 845 P.2d 289 (1993). We find difficulty only with the phrase "moral certainty." The instruction otherwise clearly and properly communicates the concept of reasonable doubt. We find that in context here, the phrase "moral certainty" does not invalidate the instruction, although we disapprove its use.

The phrase "moral certainty" was a central issue in the Supreme Court's analysis of one of the instructions challenged in *Victor*. The Court there considered a California instruction reading as follows:

A defendant in a criminal action is presumed to be innocent until the contrary is proved, and in case of a reasonable doubt whether his guilt is satisfactorily shown, he is entitled to a verdict of not guilty. This presumption places upon the State the burden of proving him guilty beyond a reasonable doubt.

Reasonable doubt is defined as follows: It is not a mere possible doubt; because everything relating to human affairs, and depending on moral evidence, is open to some possible or imaginary doubt. It is that state of the case which, after the entire comparison and consideration of all the evidence, leaves the minds of the jurors in that condition that they cannot say they feel an abiding conviction, *to a moral certainty*, of the truth of the charge.

511 U.S. at 7 (some emphasis removed).

The Court discussed the hundred-year legal history of the phrase "moral certainty," and noted that in 1850, it meant "a state of subjective certitude." The Court also pointed out that, in early cases, proof to a moral certainty was held to be equivalent to proof beyond a reasonable doubt. *Victor*, 511 U.S. at 12 (citing *Fidelity Mut. Life Ass'n v. Mettler*, 185 U.S. 308, 317, 22 S. Ct. 662, 46 L. Ed. 2d 922 (1902)). The Court expressed skepticism, however, about the modern juror's understanding of the term, and examined the remainder of the instruction, noting that "the moral certainty language cannot be sequestered from its surroundings." *Victor*, 511 U.S. at 16. The Court found that "the rest of the instruction . . . lends content to the phrase," and concluded that because the jurors were told that after "the entire comparison and consideration of all the evidence," they must have an abiding conviction of the truth of the charge, the reference to "moral certainty" did not invite the jury to convict on less proof than due process requires. *Victor*, 511 U.S. at 8, 14, 16-17. Thus, the Court's discomfort with the archaic phrase was resolved by examination of its effect in the total context. While the Court disapproved the use of the phrase, the court unanimously sustained the constitutionality of the instruction. *Victor,* 511 U.S. at 16-17.

By contrast, in *Cage v. Louisiana*, 498 U.S. 39, 111 S. Ct. 328, 112 L. Ed. 2d 339 (1990), the Supreme Court summarily struck down a reasonable doubt instruction partly because it included the same phrase. The challenged instruction read:

[A reasonable doubt] is one that is founded upon a real tangible *substantial* basis and not upon mere caprice and conjecture. It must be such doubt as would give rise to a *grave* uncertainty, raised in your mind by reasons of the unsatisfactory character of the evidence or lack thereof. A reasonable doubt is not a mere possible doubt. It is an actual *substantial* doubt. It is a doubt that a reasonable man can seriously entertain. What is required is not an absolute or mathematical certainty, but a *moral certainty.*"

*Cage*, 498 U.S. at 40 (emphasis added).

Upon examining the underlined words in context, the Court found the instruction wanting:

[T]he words "substantial" and "grave," as they are commonly understood, suggest a higher degree of doubt than is required for acquittal under the reasonable-doubt standard. When those statements are then considered with the reference to "moral certainty," rather than evidentiary certainty, it becomes clear that a reasonable juror could have interpreted the instruction to allow a finding of guilt based on a degree of proof below that required by the Due Process Clause.

*Cage*, 498 U.S. at 41.

Later, the Court clarified the test: "[T]he proper inquiry is not whether an instruction 'could have' been applied in an unconstitutional manner, but whether there is a reasonable likelihood the jury *did* so apply it." *Victor*, 511 U.S. at 6 (citing *Estelle v. McGuire*, 502 U.S. 72 n.4, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991)).

From our examination of the whole instruction here, we conclude it is not reasonably likely the phrase "moral certainty" caused the jury to apply a lower standard or require a higher degree of doubt. The *Cervantes* instruction includes no words such as "substantial" or "grave." The *Cervantes* instruction also focuses the jury on the correct inquiry in a practical way, by directing that the proof "need not exclude every hypothesis or possibility of innocence, but . . . must exclude every fair and rational hypothesis except that of guilt." Further, the instruction

required the jurors to have "an abiding belief in the truth of the charge," and twice directed the jury to consider the entirety of the evidence. As in *Victor*, correct and clear language prevents archaic language from causing confusion. While we too disapprove of the use of the phrase "moral certainty," we have no fear that its use here corrupted the deliberation process or violated due process.

 Nor do the phrases "honest conscientious doubt" or "honest misgiving" invalidate the instruction. Cervantes equates these phrases to the "grave uncertainty" and "substantial doubt" language disapproved in *Cage*. But the problem with "grave" and "substantial" is their implication of weight—their suggestion that a heavy doubt, rather than just a reasonable one, is required for acquittal. Doubt honestly and conscientiously held, however, is not any particular quantity of doubt. Rather, these phrases focus on the deliberative process, not its outcome. "Conscientious" means "honest," "scrupulous," "marked by or done with exact or thoughtful attention," "meticulous," or "careful." WEBSTER's THIRD NEW INTERNATIONAL DICTIONARY 482 (1981). We may take as a given that jurors are to be thoughtful, careful, and conscientious when analyzing evidence. Indeed, the standard WPIC instruction proposed by Cervantes defines reasonable doubt as one "that would exist in the mind of a reasonable person after fully, fairly, and carefully considering all the evidence or lack of evidence." WPIC 4.01A.

Finally, Cervantes challenges the phrase "material evidence," asserting that because the phrase is not used elsewhere nor defined, jurors may have thought the type of evidence required to support reasonable doubt had to be of greater significance or consequence than that required for a finding of guilt.

██ This argument ignores the plain meaning of the word "material," which is "relevant" or "pertinent." WEBSTER's THIRD NEW INTERNATIONAL DICTIONARY 1392 (1981). While the phrase may be redundant,

there is no reasonable likelihood its use caused the jury to require a lesser standard of proof of guilt, especially in light of the final language: "If on the whole evidence, you have an abiding belief in the truth of the charge, you are satisfied beyond a reasonable doubt."

In sum, we find no constitutional violation in the instruction. It includes one formulation we find useful and practical ("every fair and rational hypothesis except that of guilt"). We do, however, disapprove of use of the phrase "moral certainty," which should not be used. And we note that the many reported cases examining reasonable doubt instructions illustrate the difficulties presented in drafting nonstandard instructions, in which particular words and phrases, in conjunction with other words and phrases, may follow the law of unintended consequences and create confusion rather than enlightenment.[4] Great care must be given to this most important instruction in the entire constellation of instructions, because due process may deem few unintended consequences to be harmless.

Affirmed.

The balance of this opinion has no precedential value, and will not be published. It will be filed for the public record in accordance with RCW 2.06.040.

GROSSE and COX, JJ., concur.

Review denied at 134 Wn.2d 1013 (1998).

---

[4]For one discussion of reasonable doubt instruction issues, see Amy K. Collignon, Note, *Searching for An Acceptable Reasonable Doubt Jury Instruction in Light of* Victor v. Nebraska, 40 ST. LOUIS U. L.J. 145 (1996).