110 P.3d 758 (2005)
STATE of Washington, Respondent,
v.
George E. DYKSTRA, Jr., Appellant.
No. 22629-8-III.
Court of Appeals of Washington, Division 3, Panel Eight.
February 8, 2005.
Publication Ordered April 19, 2005.
Reconsideration Denied April 19, 2005.
*759 Douglas D. Phelps, Phelps & Associates, Spokane, WA, for Appellant.
Kevin M. Korsmo, Andrew J. Metts, Deputy Prosecuting Attorneys, Spokane, WA, for Respondent.
*760 SWEENEY, A.C.J.
¶ 1 A jury convicted George Dykstra, Jr. of five counts of first degree theft for his role in an auto theft ring. He appeals and assigns error to a number of the court's rulings, including its refusal to suppress his noncustodial statements to police, its refusal to give a unanimity instruction, and its refusal to prohibit the State from responding to comments his lawyer made during final argument. We find no error in any of these rulings. And Mr. Dykstra was not entitled to jury findings on the facts underlying his license suspension. We therefore affirm his convictions and the Department of Licensing's action suspending his driver's license.

FACTS
¶ 2 George Dykstra, Jr. was part of an auto theft ring. Two Spokane police detectives visited Mr. Dykstra at the downtown Spokane car dealership where he worked. They told him he was under investigation and read him the standard Miranda[1] rights. He agreed to an interview at the police station the following day. The next day Mr. Dykstra showed up at the station. The detectives again told him he was a suspect and again read him his rights. Mr. Dykstra waived his rights and made statements that were later admitted at trial.
¶ 3 The State charged him with five counts of first degree theft. Each count in the information gives the date, describes the particular vehicle stolen, and identifies the owner. Mr. Dykstra moved to suppress the statements. He said he did not understand that a free attorney would be provided before any questioning, if he needed one. The court denied his motion to suppress his statements.
¶ 4 Some of Mr. Dykstra's collaborators pleaded guilty and testified that he provided the key codes they used to obtain keys. He also took some of the cars. He acted as lookout at least once. And he helped strip the stolen vehicles for parts.
¶ 5 Mr. Dykstra's lawyer pointed out several times in closing that only Mr. Dykstra was on trial. And he invited the jury to speculate why. He implied that the others had escaped prosecution altogether. His suggestion was that Mr. Dykstra should be acquitted in the spirit of fairness. The prosecutor told the jury that the State had prosecuted everyone it had evidence to prosecute. The defense objected that this was improper argument. The court overruled.
¶ 6 The court refused Mr. Dykstra's request for a Petrich unanimity instruction.[2] And the court instructed the jury on reasonable doubt as follows:
The defendant has entered a plea of not guilty. That plea puts in issue every element of the crime charged. The State is the plaintiff and has the burden of proving each element of the crime beyond a reasonable doubt. The defendant has no burden of proving that a reasonable doubt exists.
A defendant is presumed innocent. This presumption continues throughout the entire trial unless during your deliberations you find it has been overcome by the evidence beyond a reasonable doubt.
A reasonable doubt is one for which a reason exists and may arise from the evidence or lack of evidence. Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the defendant's guilt. There are very few things in this world that we know with absolute certainty, and in criminal cases the law does not require proof that overcomes every possible doubt. If, based on your consideration of the evidence, you are firmly convinced that the defendant is guilty of the crime charged, you must find him guilty.
Clerk's Papers (CP) at 128 (instruction 5).
¶ 7 A jury found Mr. Dykstra guilty of all five counts of first degree theft. The Department of Licensing revoked Mr. Dykstra's driver's license and refused his request for a hearing. He argued to the sentencing court that revocation was appropriate only when a vehicle was the instrumentality of the crime, not the object. The court concluded that the convictions constituted felonies involving the *761 use of an automobile. And they therefore triggered the mandatory driver's license revocation provisions of RCW 46.20.285.[3]

DISCUSSION

ADMISSION OF MR. DYKSTRA'S STATEMENTS
¶ 8 We review an alleged Miranda violation de novo. State v. Curtis, 110 Wash. App. 6, 11, 37 P.3d 1274 (2002).
¶ 9 Mr. Dykstra argues that, before custodial questioning, a criminal defendant must be advised that, if he wants an attorney before questioning and cannot afford one, the police will make the arrangements and actually produce an attorney. He contends the standard rights language on the card failed to communicate this to him.
¶ 10 Mr. Dykstra concedes he was not in custody. When a suspect who is not under arrest voluntarily presents himself at the police station, is read his Miranda rights, and states that he understands those rights, his statements are admissible at trial. State v. Visitacion, 55 Wash.App. 166, 171-72, 776 P.2d 986 (1989).

PROSECUTORIAL MISCONDUCT
¶ 11 During his closing argument, defense counsel told the jury that numerous people had been involved, but that only Mr. Dykstra had been prosecuted. He invited the jury to speculate on the reason for this: "Why did they charge George Dykstra and they didn't charge these other gentlemen?" Report of Proceedings (RP) at 745. The prosecutor responded that, "all of the people who we had evidence to charge, we did charge." RP at 746. The court ruled that the defense had opened the door for the prosecutor's comment. Here on appeal, Mr. Dykstra argues that the prosecutor's comments were misconduct in the form of vouching or testifying and that the judge commented on the evidence by overruling the defense objection in front of the jury.
¶ 12 We review trial court rulings based on allegations of prosecutorial misconduct for abuse of discretion. State v. Finch, 137 Wash.2d 792, 839, 975 P.2d 967 (1999).
¶ 13 The prosecutor may reply to defense arguments even if the remarks might otherwise be improper. But the remarks may not go beyond what is necessary to respond to the defense and must not bring before the jury matters not in the record, or be so prejudicial that an instruction cannot cure them. State v. La Porte, 58 Wash.2d 816, 822, 365 P.2d 24 (1961). Defense counsel's argument that the jury should not find Mr. Dykstra guilty because other culpable people were not charged was improper. The State's rebuttal was, then, entirely appropriate. The court did not abuse its discretion.

COMMENT ON THE EVIDENCE
¶ 14 A judge may not comment on evidence. State v. Deal, 128 Wash.2d 693, 703, 911 P.2d 996 (1996) (citing Wash. Const. art. IV, § 16). "An impermissible comment is one which conveys to the jury a judge's personal attitudes toward the merits of the case or allows the jury to infer from what the judge said or did not say that the judge personally believed the testimony in question." State v. Swan, 114 Wash.2d 613, 657, 790 P.2d 610 (1990). But the court does not comment on the evidence simply by giving its reasons for a ruling. State v. Cerny, 78 Wash.2d 845, 855-56, 480 P.2d 199 (1971).
¶ 15 The judge did not comment on the evidence here. The prosecutor rebutted defense argument by telling the jurors not to concern themselves with who was or was not charged. "I want you to know that all of the people who we had evidence to charge, we did charge." RP at 746. Defense counsel objected, and the court ruled: "This is rebuttal. You opened this door. I have to let her address it." RP at 746. That was an appropriate ruling and explanation for the ruling.

*762 UNANIMITY INSTRUCTION
¶ 16 Mr. Dykstra next argues that he was entitled to a unanimity instruction because the State alleged a variety of illegal acts by him. But he does not explain what uncharged crimes the jury might have found him guilty of so as to call the verdicts into question.
¶ 17 A jury must unanimously conclude that the defendant committed every element of the crime charged in the information. State v. Mak, 105 Wash.2d 692, 735, 718 P.2d 407 (1986). A problem arises when the State's evidence tends to prove the commission of multiple distinct offenses but the State charges only one. In that case, either the State must elect which of the crimes in evidence it is relying on for conviction or the court must instruct the jury that it must unanimously agree which offense forms the basis of its verdict. Otherwise, we cannot be sure that all the jurors found any one offense proved beyond a reasonable doubt. State v. Workman, 66 Wash. 292, 294-95, 119 P. 751 (1911); State v. Petrich, 101 Wash.2d 566, 572, 683 P.2d 173 (1984).
¶ 18 Here, the State charged five counts of first degree theft. Each charge included the date, vehicle specifics, and rightful owner. The elements of each offense were that Mr. Dykstra "did wrongfully obtain and exert unauthorized control" of a particular vehicle belonging to a particular owner on a particular date. Two of the counts charged Mr. Dykstra as a principal, three as an accomplice. And that is precisely the way the State presented the charges to the jury. The State made its election and no unanimity instruction was necessary.

REASONABLE DOUBT INSTRUCTION
¶ 19 Mr. Dykstra next challenges the sufficiency of the so-called Castle instruction. State v. Castle, 86 Wash.App. 48, 52-58, 935 P.2d 656 (1997). He contends that, by instructing the jury that the State need not overcome "every possible doubt," the court improperly allowed the jury to convict even if it had reasonable doubt. CP at 128. And this violated his due process rights.
¶ 20 The question is whether there is a reasonable likelihood that the jury understood the instruction to allow conviction based on proof less than the Winship[4] standard that every element of the offense must be proved beyond a reasonable doubt. Castle, 86 Wash.App. at 54, 935 P.2d 656 (citing Victor v. Nebraska, 511 U.S. 1, 6, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994)).
¶ 21 We review a challenged jury instruction de novo. State v. Brett, 126 Wash.2d 136, 171, 892 P.2d 29 (1995).
¶ 22 Instructions must inform the jury that the State bears the burden of proving every essential element of a criminal offense beyond a reasonable doubt. State v. Pirtle, 127 Wash.2d 628, 656, 904 P.2d 245 (1995) (citing In re Winship, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970)). A reasonable doubt instruction is sufficient if it clearly communicates to the jury the allocation of the burden of proof. State v. Coe, 101 Wash.2d 772, 787, 684 P.2d 668 (1984). "The instructions must define reasonable doubt, although no particular wording is required." Castle, 86 Wash.App. at 51, 935 P.2d 656 (citing Coe, 101 Wash.2d at 787, 684 P.2d 668).
¶ 23 The Castle court approved the instruction at issue here, because it is very close to the Federal Judicial Center model instruction, which has been characterized as "`clear, straightforward and accurate.'" State v. Cervantes, 87 Wash.App. 440, 443, 942 P.2d 382 (1997) (quoting Victor, 511 U.S. at 26, 114 S.Ct. 1239 (Ginsberg, J., concurring)).
¶ 24 Read in its entirety, the instruction told Mr. Dykstra's jury that the defendant is presumed innocent, that the State has the burden to prove every element beyond a reasonable doubt, and that the defendant has no burden to prove that a reasonable doubt exists. The court defined reasonable doubt as doubt for which a reason exists, which may arise from the evidence or lack of evidence. There was no violation of Mr. Dykstra's due process rights.

*763 DRIVER'S LICENSE SUSPENSION
¶ 25 A driver's license may be suspended for vehicular homicide and assault, driving under the influence, and for "[a]ny felony in the commission of which a motor vehicle is used." RCW 46.20.285(4). Mr. Dykstra argues that because his primary involvement was obtaining the key codes, his conduct did not involve the use of an automobile. And, in any event, the question whether a motor vehicle was used in the commission of these crimes should have been put to the jury. Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).
¶ 26 The questions then are: Whether RCW 46.20.285 permits suspension of a license for stealing a car? And if so, does Blakely require a finding beyond a reasonable doubt by the trier of fact that a car was used?
¶ 27 Due process requires a factual determination on the merits before a driver's license is revoked. Lewis v. Dep't of Motor Vehicles, 81 Wash.2d 664, 666, 504 P.2d 298 (1972). This usually means a formal departmental hearing. Id. But revocation under RCW 46.20.285 upon conviction of a felony involving the operation of a motor vehicle does not require a separate hearing because the conviction is based on findings by a court. Id.
¶ 28 Here, the sentencing court heard argument as to whether RCW 46.20.285 applied. This was in effect a judicial review of the Department of Licensing's agency action. RP at 823. The felony conviction was an undisputed fact. The sole question was whether the convictions were for crimes involving the use of a vehicle. The court found that they were: "They didn't get to these places to take these cars by walking." RP at 824.
¶ 29 For a conviction to support revocation, there must be "`some relationship between the vehicle and the commission or accomplishment of the crime.'" State v. Batten, 140 Wash.2d 362, 365, 997 P.2d 350 (2000) (quoting State v. Batten, 95 Wash.App. 127, 131, 974 P.2d 879 (1999)). In Batten, the court affirmed a license revocation where the crime was possession of drugs and the use of the vehicle was entirely incidental.
¶ 30 Mr. Dykstra's counsel argued to the trial court, as he does here, that the vehicle must be the instrumentality of the crime, not the object. Here, it was both. Mr. Dykstra and his cohorts used cars to drive around looking for other cars to steal. They took possession of the stolen cars by driving them away from the scene. A car was used by the lookout during the theft. After dismantling the engines, the unwanted parts were driven away for disposal. The court's finding that an automobile was used in the commission of the crimes is easily supported by this record.
¶ 31 Mr. Dykstra also contends that his license suspension is additional punishment not called for by the sentencing reform act and is, therefore, a sentence beyond the statutory maximum. He contends, then, that the court's reliance on facts not found by a jury violated his due process right to a jury trial as guaranteed by the Sixth Amendment and article I, section 22 of the Washington Constitution. Our review is, therefore, de novo. State v. Curtis, 110 Wash.App. 6, 11, 37 P.3d 1274 (2002).
¶ 32 A judge may not impose punishment greater than the statutory maximum absent a finding of the aggravating facts beyond a reasonable doubt. Blakely, 124 S.Ct. at 2537. The facts supporting the sentence must either be admitted by the defendant or inherent in the verdict. Id. The Blakely rule protects the Sixth Amendment right to trial by jury. Id. at 2538-39. But it does not apply to a driver's license suspension.
¶ 33 First, the Department of Licensing, not the court, acts on the license. The revocation is automatic upon notice to the department of the appropriate felony conviction. Sentencing has nothing to do with it. RCW 46.20.285. In this case, the Department of Licensing had already suspended Mr. Dykstra's license before sentencing.
¶ 34 Second, there is no right to a jury trial before the Department of Licensing can suspend a driver's license. License suspension is not punishment and revocation proceedings are civil, not criminal. State v. *764 Scheffel, 82 Wash.2d 872, 879, 514 P.2d 1052 (1973). There was, then, no right to a jury trial on the suspension of Mr. Dykstra's license.
¶ 35 We affirm the convictions and the license suspension.
WE CONCUR: KURTZ and BROWN, JJ.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[2] State v. Petrich, 101 Wash.2d 566, 572, 683 P.2d 173 (1984).
[3] RCW 46.20.285 provides in part: "The department shall forthwith revoke the license of any driver for the period of one calendar year unless otherwise provided in this section, upon receiving a record of the driver's conviction of any of the following offenses, when the conviction has become final:

"....
"(4) Any felony in the commission of which a motor vehicle is used."
[4] In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).